Good afternoon, your honors. I may please the court. My name is Ronald Park, and I'm a certified law student working under the supervision of clinical professors at UCI Law. I'm here today on behalf of Petitioner Shouchen Yang, and I'll be giving the petitioner's opening argument. My colleague, Emily Cross, will be handling the rebuttal, for which we intend to reserve at least two minutes of our time. Thank you, and your honors, this is a rebuttal of EIA's denial of Ms. Yang's motion to reopen, because the board abused its discretion in this case. The law of this circuit, since at least Godess of the INS, is that the Board of Immigration Appeals is not permitted to make adverse credibility determinations on a motion to reopen, and that is exactly what the board did in this instance. If we turn to the board's decision... Did the board make an adverse credibility determination, or did it assume something about what the IJ would have said about credibility? Well, your honor, it did both. If we turn to the board's decision and the administrative record, the board mentioned that Ms. Yang had been found incredible in an earlier proceeding by the IJ, and you're right, your honor, the board is assuming that had the IJ had this new evidence before her, she would have concluded that Mr. Yang was incredible as to his religious persecution claim as well, but that assumption is itself an adverse credibility determination. The IJ didn't actually get to see this evidence, so the board is the first body to have it... Well, let me... Your client had been ordered deported, is that correct? Yes, that is correct. And now your client is wishing to reopen those proceedings, is that correct? Yes. In the original proceedings, he was found incredible on his claim that he risked persecution because of protests he engaged in against his employer. Yes. And now his claim is what? That he will be persecuted upon return to China on the basis of his religion. He converted to the Shrouders Church while he was in the United States. This conversion happened after his immigration proceedings, so he did not have an opportunity to present that evidence before the IJ, and on that basis he's moving to reopen. And what the board has done is instead of looking at the substance of his evidence, it merely noted that he had been found incredible before on this completely separate political opinion claim, and is assuming that he is also incredible in this instance. That is effectively an adverse credibility determination. Well, the board said it was unlikely that he was going to change the result. His claim is that he converted to a religion that is persecuted in China, and he did this after he knew he was going to be sent back to China. Is that correct? Yes, that's correct, John. And he says that he sent his wife books, and his wife was threatened by authorities because of the religious books he sent her. And he did all this after he knew he was going to be deported. Yes. And so do you think that the board, that we could just say, okay, we believe him that he did these things, but it's not going to change the result? Well, no, Your Honor, because the board isn't the fact finder here. Once it reopens the case, the IJ will go into all this evidence. So the board would effectively be assuming that the IJ would find that there's no eligibility for asylum here. And that's not its function. The board is supposed to take the evidence as true and really determine whether there's a prima facie case. That is, whether there's a reasonable likelihood that statutory requirements for relief are met. And based on the evidence that Mr. Ying has presented, he appears to have established a prima facie case here. The facts of his case are very similar to the case of Yongping Hu v. Holder, where a panel of the circuit held that the BIA had appeared by denying the petitioner's motion to reopen in that case. And the facts in that case, and in this case, both involve a petitioner, a Chinese national who converted to the Shouter's church. Both petitioners sent religious materials, specifically Shouter's books, back to a wife in China. And in both instances, government authorities abused the wife back in China on account of these religious materials. Was the conversion in the other case also after the removal order? Yes. Yes, it was. And so given that the panel came out in that way and who, it appears that a prima facie case is established here. But the board did not go into any of this. What it did was just looked at this previous adverse credibility finding and concluded that Mr. Ying's motion should be denied. Now, Respondent has argued in his brief that the maxim falsis omnibus should apply in this instance. But the cases that the brief cites aren't quite on point. In Ying Li v. Holder, this circuit held that the IJ is permitted to make, or rather invoke, falsis in immigration proceedings. And do you agree that the IJ could invoke that doctrine on remand here? Yes. Yes, it could, because the IJ is a fact finder. And the history of falsis in this instance, if a witness is testifying falsely as to one respect, he's testifying falsely as to all respects. But the BIA on a motion to reopen is not a fact finder. A motion to reopen is not a fact finding hearing. In fact, the specific language in the regulations that discuss the requirements of a motion to reopen state that the petitioner is supposed to present new and material facts that, quote, will be proven, end quote, at a hearing to be held if the motion is granted. So the language indicates that there's no requirement that any fact be conclusively established on a motion to reopen. Rather, once again, the board's supposed to accept this evidence on its face and determine whether or not a prima facie case has been established. He has not alleged that he was ever persecuted in China before on the basis of religion? Him personally, no, Your Honor. The persecution up to this point has been towards his wife. And in fact, going back to respondents, the cases, in fact, only one case actually explicitly says that the board is permitted to invoke falseness on a motion to reopen. It's a Second Circuit case, Chin-Wen Zeng v. Gonzalez. But if we dig into the opinion by the Second Circuit, the Second Circuit didn't really give much reasoning. What it did was it cited to two of its earlier decisions. And both of those decisions, if we go into those, deal with the IJ's use of falseness and not the BIA. And for that reason, in this instance, the board abuses discretion here and the motion, or rather, the BIA's denial should be reversed. And we'd like to reserve our remaining time for rebuttal. Thank you. Thank you. May it please the court. I'm Jonathan Robbins here on behalf of the respondent, the Attorney General. Good afternoon. Good afternoon. So the issue before the court today is whether or not the board abused its discretion in denying petitioner's motion to reopen. And what we're looking at when we're looking at an abuse of discretion is whether the decision is in some way arbitrary, irrational, or contrary to law. And what the board did here is they're essentially arguing they claim is contrary to law because it considered the underlying adverse credibility proceeding from proceedings below. And the government submits that this is a valid exercise of the board's discretion. The board has discretion to consider this underlying adverse credibility determination in looking at the reliability of the evidence. Petitioner has a very heavy burden that is recognized by the Supreme Court to reopen proceedings. That heavy burden requires that he has to show that the outcome would change. And the Supreme Court has very clearly said, given language that I think is particularly pertinent to this case, granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case. And I would say that this case is exactly what they were warning against. Look at the particular facts in this case. Petitioner was found not credible on his first claim and proceedings below. Before the board could even issue a decision upholding the denial of the credibility finding, he converted to a new religion. He didn't just convert to a new religion, he converted to, because Christianity is an approved religion in China, he converted to a specific sect that has been recognized as a cult in China. And so then the board's decision comes out and around the same time he converted. So he has 90 days to file a motion to reopen or he's going to face significant hurdles. So what does he, but he doesn't have an asylum claim yet because there's no, he converted in the United States. There's no indication that the Chinese government would have any idea that he's converted to this shadow religion. So within 90 days he manages to, he claims that he accidentally alerted the Chinese government to the fact that he was a shouter. And you know, I would submit that motions to reopen, they usually fall into one of two categories. You usually get a category where they're untimely motions to reopen and they're timely motions to reopen. And this was timely? This was timely. Untimely motions to reopen are usually where you see a claim like this because it's usually based on some change in the country conditions. You know, it's supposed to be a saving grace for aliens when the conditions change in a country. But I don't understand. Are you saying that because it was a timely motion we should be viewing it more skeptically? Well, I'm saying the board had a reason to look at it more skeptically. It's unusual. You don't normally see a... But is that a credibility determination? No, the board didn't make a credibility determination in this case. They made a reliability determination to the persuasiveness of the evidence. Well, what's the difference? The burden that he has to meet goes beyond credibility. He has to show that a new trial essentially is warranted. That's what the Supreme Court is likened to motion to reopen, asking for a brand new trial. And so what the board said is, look, you've already brought a non-credible claim to us the first time. You haven't, in your motion, bearing in mind that you bear this heavy burden, you haven't explained to us... I guess my... I'm sorry to interrupt, but I guess my problem with the analytical framework that you're creating is you said, we've already determined that you weren't credible the first time, but the BIA never determined that he wasn't credible. All the BIA did is review an IJ's determination for clear error. It did. And so for all we know, the BIA said, you know what? It seems actually like he was credible, but we can't reverse the IJ's decision for clear error. And so how could it be that if it's possible the BIA thought maybe he was credible, but the IJ wasn't so obviously wrong, that the BIA can then turn around and say, well, what he said before was false, and so we must consider this to be false. Analytically, that just doesn't make any sense to me. Well, there are two points that I'd make to that. First, with respect to the motion to reopen, it's the petitioner's burden to show that reopening is warranted. So if he wants to make that argument that the board did this, that's something he has to raise in his motion to reopen. That's what the board was talking about in the instant motion to reopen. They said, look... Why? I mean, it's obvious to me everybody knows that when the BIA is reviewing an IJ's case, it's merely reviewing it for clear error. Are you saying that he had to say... But it is upholding the underlying credibility determination, and that becomes... Essentially what it did is it treated it as the law of its case. It had already adjudicated it. It had upheld that. And so, you know, I don't think there's any statute, regulation, or case law that says that an adjudicating body has to ignore its law of the case when it's considering... Well, we've said that the board shouldn't make credibility determinations. Well, they didn't make a credibility determination yet. Couldn't the IJ have believed this religious testimony? I mean, you're saying it's very suspicious that he converted after he already had the earlier decision. But it's possible the IJ could listen to him and believe him if he was testifying in the IJ's courtroom. Couldn't that be? Well, here's what they said with respect to that. With respect to... There were sort of two parts. First, they said because of your credibility determination and the fact that you haven't explained why we should overlook your credibility determination, we find that the statements that you submitted aren't reliable. They also specifically cite and highlight to a particular document, which is, I think, the critical document in order to demonstrate a prima facie case for relief in this case. That's the letter from the wife. You know, the regulations say that motions to reopen are supposed to be accompanied with affidavits and other materials. And this wasn't an affidavit. The board noted that it wasn't even sworn... So are you saying that we should hold it against his credibility that he submitted something from his wife that wasn't properly notarized in China? Is that what you're saying? Well, that is relevant because the regulations do require that they contemplate... But don't we have case law that says that the failure to have notarization doesn't hold... We can't hold that against someone as a credibility determination? But again... We can hold it on the credibility of the document itself and say this document isn't credible because it's not notarized. But the person who happens to have submitted it, we're not supposed to say that goes to their credibility, aren't we? Again, this wasn't a credibility determination. The board never said that this was false. They never said that these documents were false. What they said was that it wasn't enough to meet his burden of persuasion to demonstrate that a new hearing was warranted. Well, this is what bothers me for a natural argument because it seems to me that a person on reopening, it's true, has a high burden to show, to allege facts that are going to change the result. But are you arguing that he's lying about becoming a shouter? No. Or are you arguing that he hasn't made a prima facie case even if it's true that he had this last minute conversion and sent the books to his wife and the wife was threatened because the books came to her? You're saying that that isn't a prima facie case? We're not saying that he was lying. The board didn't say that. The government isn't saying that. They did not say he was lying. So what are they saying? The board was very clear. They didn't say credibility. Look at the exact language they use. When they're talking about the reliability of the letter from the wife, not credibility of the letter, reliability. When they're talking about the other statements, they say... That it's a false letter? It's a fake letter? Is that what they're saying? No, that it's not reliable enough to meet his burden of demonstrating that this warrants a new hearing. Again, essentially, this is sort of... Wait. Okay. The board says, further, the respondent has not shown why the board should now accept the statements offered in support of the motion as reliable where his past testimony has been found to lack credibility. How is that not them saying that we don't believe him because of his prior credibility determination? All they're saying is that he hasn't given a reason why they should take these documents as reliable. But credibility and reliability are not the same thing. What do you mean? What is reliability? Credibility is they would be actively saying that his evidence was false. But reliability goes to the persuasiveness needed to meet his burden to demonstrate that he warrants a new hearing. There are two separate phases. The Supreme Court has recognized this. That just because you could demonstrate prima facie eligibility for relief doesn't get you automatically a new hearing. There's that other step, that heavier burden that the Supreme Court talks about in order to demonstrate that you warrant, essentially, a new trial. And this letter is not reliable because it didn't include some sort of certification? Or it wasn't sworn. It wasn't sworn. So the thing I don't understand about that argument is I'm looking at the letter, and this is a letter from a wife to a husband. And it says, Hi, I'm writing to tell you that I just received the magazines you sent me, but I didn't receive the Bible. Several days ago, two people from the city's religious administration, bureau and district police station came to our home and they threatened me and blah, blah, blah. When a wife writes a letter like that to her husband, is she supposed to say, I swear under penalty of perjury that the foregoing is true and correct? I mean, I've never seen a letter from a wife to a husband that has something like that. It is petitioner's burden to produce the evidence that he needs to demonstrate. But couldn't his evidence be, this is my wife's handwriting. This is my wife. She sent me this letter. If you believed him, if you found him to be credible, then he could authenticate the letter. But you're applying some kind of estoppel or something. It's his job to authenticate the letter with his motion reopened. Yeah, but didn't he say this is my wife's letter? You seem to be saying that his wife needed to go to some notary in China and get her letter notarized to her husband before she sent it. Why would she? Why would a wife do that? How about what? Swearing to the contents. The wife? That's what regulations require. When you write a letter to your husband, when do you swear to the contents of the letter you're writing to your husband? It's petitioner's burden to get that evidence. Again, it's not the government's burden to show that he Right, but again, he said, look, my wife wrote me this letter and it's in her handwriting and she says that it's postmarked from China. I mean, what more can he do in this context? Well, first, what he could have done is he could have explained why the board should overlook the underlying adverse credibility determination. The board specifically instructed him as to what he could have done. He could have explained why or provided some explanation as to why he should overlook the fact that he'd already brought a non-credible claim to the government. Yes? Okay, you've overused your time. I just wanted you to comment on the case that was cited by your adversaries. Which case? The Hu case that they've argued is the same facts. None of the cases that they cite into the brief deal with the underlying adverse credibility determination, which the board has acknowledged with their respect in a matter of their religion. But doesn't Hu show that he has a prima facie case if he's believed? I don't believe, no, because the evidence here, I mean, I don't know the specific evidence that was presented in that case, but each case you have to look at the evidence specifically to determine whether it's reliable, whether, you know, in this case it wasn't reliable on the basis of the underlying adverse credibility determination. Okay, we have your argument. Thank you. Thank you very much. Good afternoon, Your Honors. To the extent respondent argues that what the BIA has done in this case is not a credibility determination, that is a mischaracterization. The IJ on Mr. Yang's whistleblower claim never had the opportunity to examine the evidence that Mr. Yang has now presented on his religious persecution claim. Therefore, if the BIA is allowed to adopt the IJ's adverse credibility determination, it is essentially a de facto credibility determination made by the BIA. As explained in Servia Quintinia v. INS, the BIA is not equipped to examine a petitioner's testimony or demeanor or to make other factual findings in terms of credibility. To the extent that the government argues that this is not a credibility determination, but it is rather a question of reliability, the BIA has still erred because it has not pointed to any evidence in the four corners of Mr. Yang's motion to reopen claim indicating that he is unreliable in any regard. The BIA is required to point to evidence that would show some sort of internal inconsistency or somehow contradict the essential facts of Mr. Yang's case and the BIA has not done so here and it has therefore abused its discretion. With regard to the letter from Mr. Yang's wife, a few points. First, lack of authentication alone is not sufficient to establish an adverse credibility determination or an unreliability claim. That is the holding in Wang v. INS as well as Zhao v. Holder and therefore here the BIA would not be permitted to do so. Additionally, they could hold it against the weight of the letter though, right? They can't hold it against Mr. Yang that he submitted a letter without authentication and say that makes Mr. Yang not credible, but they could say we don't give the letter as much weight as we would if it was authenticated. No, Your Honor. The BIA would not be permitted to do that because it is not a fact finder and therefore it is not allowed to weigh the evidence. On a motion to reopen, the BIA is required to take all evidence as true unless it is inherently unbelievable and because the BIA has not indicated in any way that Mr. Yang's new evidence is inherently unbelievable, it would not be permitted to give less weight to the weight of the letter. Well, say he only submitted, say he had no testimony. He didn't say he was a shouter. He didn't say anything happened. All he did was offer a letter that wasn't authenticated. That was the only new thing he had on reopening. Would he then qualify for reopening? Your Honor, if the wife's letter alone were the only evidence that Mr. Yang had submitted, he could possibly qualify for reopening based on establishing a reasonable likelihood of success on his claim. Contrary to what Respondent argues, Petitioner does not bear a heavy burden on a motion to reopen. That was stated in Matter of Qualo. However, that is not a case that is binding on this Court. It was a case decided by the BIA. Instead, Tadevossian is the case binding on this Court and in that case, this Court held that the Petitioner merely must establish a reasonable likelihood of success on the merits of his claim. Therefore, in Mr. Yang's wife's letter, we have evidence indicating that he has converted to the shouter's religion. He sent materials to his wife. His wife was abused by the Chinese government. All of this, based on what we see in Huya Holder, is sufficient to establish a reasonable likelihood of success on Mr. Yang's asylum of holding a removal claim. Thank you. You're out of time. Thank you very much. Thank you for participating in our pro bono program. Thank you. Thank you to all counsel for your attendance.
judges: Schroeder, Friedland, Chhabria